IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-257-D

| | |
|---|---|
| SHAUNA P. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Shauna P. Williams ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for supplemental security income ("SSI") on the grounds that she is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 33, 35). The motions have been fully briefed.[1] The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 37). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Each party filed a memorandum in support of its motion (D.E. 34, 36).

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for SSI on 27 August 2010, alleging an amended disability onset date of 15 November 2009.[2] Transcript of Proceedings ("Tr.") 12, 33, 180-81. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 12. On 19 July 2012, a video hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff, plaintiff's father, and a vocational expert testified. Tr. 29-61. In a written decision dated 10 August 2012, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 12-24. Plaintiff timely requested review by the Appeals Council. Tr. 8. The Appeals Council admitted additional evidence (Tr. 793-877),[3] but on 22 October 2013 denied the request for review (Tr. 1-7). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 16 December 2013, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v.*

---

[2] Despite the amendment of her onset date, the ALJ's decision cites the original onset date of 31 December 2008. Plaintiff has made no objection to the ALJ's decision based on this error, and the court does not deem it material to the issue she has raised in her motion.

[3] The Appeals Council considered other evidence submitted by plaintiff as well, but returned it to her because the records concerned the time period following the ALJ's decision. Tr. 2.

*Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 45 years old on the date she filed her application for SSI and 47 years old on the date of the administrative hearing. *See* Tr. 22. The ALJ found that she has a limited education. Tr. 22 ¶ 8; *see also* Tr. 35 (plaintiff's testimony that she completed eighth grade); 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education). The ALJ further found that plaintiff had past relevant work as a cosmetologist. Tr. 22 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of her application. Tr. 14 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease, hepatitis C, fibromyalgia, restless leg syndrome, depression, and rule out[4] cognitive disorder

---

[4] The phrase "rule out" indicates that an individual has been found to potentially meet the diagnostic criteria for a particular medical condition, but that additional evidence is needed for a definitive diagnosis. *See, e.g., Young v. Astrue*, No. 1:12-cv-00317-MJD-RLY, 2013 WL 501752, at *1 n.2 (S.D. Ind. 8 Feb. 2013) ("'Rule out' in a medical record means that the disorder is suspected, but not confirmed—i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012)); *Rizzo v. Colvin*, Civ. Act. No. 12-88-DLB, 2013 WL 1345348, at *3 (E.D. Ky. 1 Apr.

NOS.[5]  Tr. 14 ¶ 2.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings.  Tr. 14 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day.  Tr. 16 ¶ 5; *see* 20 C.F.R. § 416.967(b).[6]  She further found that plaintiff was subject to the following limitations:

> [C]laimant could perform no more than frequent stooping and frequent handling with her left upper extremity; furthermore, the claimant was able to understand, remember, and carry out simple, routine, repetitive tasks in a non-production work environment with few workplace changes and occasional interaction with the general public and co-workers.

Tr. 16-17 ¶ 4.

Based on her determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work as a cosmetologist.  Tr. 22 ¶ 5.  At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of housekeeper and cafeteria attendant.  Tr. 23 ¶ 9.  The ALJ accordingly concluded that plaintiff was not disabled.  Tr. 23 ¶ 10.

---

2013) ("In the medical context, this phrase ["rule out"] simply means a diagnosis which is possible, but not yet established.").

[5] NOS, signifying "not otherwise specified," is used when, among other circumstances, "[t]he [individual's] presentation conforms to the general guidelines for a mental disorder in the diagnostic class, but the symptomatic picture does not meet the criteria for any of the specific disorders." *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") 4 (4th ed., Text Revision (2000) ("DSM-IV-TR")).

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot htm (last visited 21 Jan. 2015).  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 416.967.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence

supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *l-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contention

Plaintiff asserts that the ALJ erroneously determined that she does not meet or medically equal Listing 12.05 for mental retardation. Specifically, she challenges the ALJ's determination that she does not meet any of the three criteria for Listing 12.05C. Although the ALJ determined that plaintiff also failed to satisfy the other paragraphs of Listing 12.05, A, B, and D, plaintiff does not challenge those determinations.

### C. Analysis

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL

31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

To satisfy Listing 12.05C,[7] a claimant must meet three requirements. First, he must first satisfy the introductory diagnostic description for mental retardation. *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning is defined by the intelligence quotient ("IQ") obtained using one or more of the standardized, individually

---

[7] Listing 12.05 reads in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>         . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C.

administered intelligence tests. *See* DSM-IV-TR 41.[8] Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV-TR 42. Areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

In addition to the diagnostic description, a claimant must satisfy the two requirements relating to the severity of the mental retardation. Specifically, a claimant must demonstrate both a "valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C.

Here, the ALJ found that plaintiff did not satisfy any of the three requirements of Listing 12.05C. Tr. 16 ¶ 3. With respect to the diagnostic description, she stated:

> The evidence showed the claimant functioned in the mild range of mental retardation, but the adaptive functioning criterion was not met. The claimant demonstrated good adaptive behavior, social competence, and social maturity through a successful work history as to preclude a conclusion of disabling mental retardation.

Tr. 16 ¶ 3. As to the IQ requirement, the ALJ found that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70." Tr. 16 ¶ 3. With respect to the final

---

[8] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we [*i.e.*, the Social Security Administration] use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, 2002 WL 661740, at 20022 (Soc. Sec. Admin. 24 Apr. 2002). The court notes that the current version of the DSM ("DSM-V"), which was published after the date of the ALJ's decision in this case, has replaced the term "mental retardation" with "intellectual disability." DSM-V 33 (2013).

requirement, the ALJ stated "the claimant does not have . . . a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. 16 ¶ 3. The ALJ's findings on each requirement are examined below.

### 1. Additional Impairment Requirement

Turning first to the additional impairment requirement, the court agrees with plaintiff that the ALJ erred in determining that she did not have an additional physical or mental impairment that imposes significant work-related limitations. In addition to "rule out cognitive disorder NOS," the ALJ found plaintiff to have five other severe impairments—degenerative disc disease, hepatitis C, fibromyalgia, restless leg syndrome, and depression. Tr. 14 ¶ 2. Additional impairments that are found to be severe within the meaning of the Regulations satisfy this prong of Listing 12.05C. *See Reynolds v. Colvin*, No. 6:13-CV-22604, 2014 WL 4852242, at *16 (S.D.W. Va. 19 Aug. 2014) *report and recomm. adopted by* 2014 WL 4852250, at *6 (29 Sept. 2014) ("[A]n additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as 'the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities.'" (quoting *Luckey v. United States Dep't of Health & Human Servs.,* 890 F.2d 666, 669 (4th Cir. 1989))). The ALJ's finding that plaintiff was unable to return to her past relevant work (Tr. 22 ¶ 5) also contradicts her determination on the additional impairment requirement. *See Flowers v. United States Dep't of Health & Human Servs.,* 904 F.2d 211, 214 (4th Cir. 1990) ("[I]f a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05C."). Thus, as a matter of law, plaintiff meets the additional impairment requirement of Listing 12.05C.

## 2. IQ Requirement

Regarding the IQ requirement, the record does contain verbal and full-scale IQ scores for plaintiff within the required range of 60 to 70.[9] Specifically, a 6 April 2011 psychological consultative examination by Robert Radson, M.S., found plaintiff to have a verbal IQ score of 66 and a full-scale IQ of 65. Tr. 587-91. Mr. Radson opined that "[t]he results [of the IQ test] suggest that [plaintiff] was functioning intellectually within the mild range of mental retardation." Tr. 589. He further concluded that "[t]he results of the cognitive instrument were accurate," but also qualified that he had no previous psychological evaluation of plaintiff for comparison. Tr. 590.

The ALJ refers to these scores in her decision, albeit not at step three, but in her RFC analysis[10]:

> The claimant was administered the Wechsler Adult Intelligence Scale and she score[d] a 66 in verbal comprehension, a 71 in perceptual reasoning, and a full-scale IQ of 65. These results suggested the claimant was functioning intellectually within the mild range of mental retardation.

Tr. 20 ¶ 4. It is therefore apparent that the ALJ did consider these scores. Accordingly, the ALJ's determination that plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70" signifies that she did not deem the scores obtained by Mr. Radson to be valid.

The ALJ does not clearly explain the grounds on which she found the scores not to be valid. While the ALJ does indicate that she gave "little" weight to Mr. Radson's opinion of

---

[9] In addition, plaintiff's school records indicate that, at the ages of 8, 9, and 10, plaintiff had IQ scores of 96, 91, and 86, respectively. Tr. 218.

[10] The fact that the reasons underlying an ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error where the decision read as a whole makes them clear. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11-1453-DCN-BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) ("This sort of deconstruction of the ALJ's decision[ ] is not useful. The ALJ's decision must be read as a whole."), *report and recomm. adopted by* 2012 WL 3308108, at *1 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08-CV-209-D(l), 2009 WL 2489264, at *5 (E.D.N.C.) ("[T]he ALJ's decision may appropriately be read 'as a whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3rd Cir. 2004))), *mem. and recomm. accepted by* 2009 WL 2489264, at *1 (13 Aug. 2009).

plaintiff's mental limitations, her explanation does not squarely address her implicit determination that the IQ scores he obtained are invalid:

> Mr. Radson stated the claimant was able to understand and follow instructions. She was able to perform simple repetitive tasks. The claimant would have difficulty relating to others in a typical work setting given the results of the cognitive instrument [*i.e.*, IQ test] and she would have difficulty tolerating the stress and pressures associated with a typical work day given the results of the cognitive instrument. This opinion of the claimant's mental limitations was given little weight as the evidence did not support consistent difficulty getting along with others or handling the stress and pressure of every day work due to the lack of mental health treatment and her ability to get along with family. (Ex. 6F).

Tr. 21-22 ¶ 4.

Reading the ALJ's decision as a whole, it appears that the ALJ discounted the IQ scores because she deemed them incompatible with plaintiff's level of functioning. It would not be improper for an ALJ to make such a determination. "An ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). More particularly, an ALJ may "reject [IQ] scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving *or has more advanced functional capacities* than would be expected from someone with a below-average [IQ]." *Maybank v. Astrue*, No. C/A 4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. 31 Aug. 2009) (emphasis added); *see also Powell v. Barnhart*, No. 6:04–CV–63, 2005 WL 1926613, at *4 (W.D. Va. 9 Aug. 2005) (holding that if an IQ score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation"). As detailed below, there is substantial evidence that plaintiff functions at a level inconsistent with her verbal IQ score of 66 and full-scale score of 65.

Thus, the ALJ's apparent determination that plaintiff fails to satisfy the IQ requirement because her functional abilities invalidate her IQ scores is based on proper legal standards and supported by substantial evidence. To the extent there is error in the ALJ's failure to more clearly express this determination, the error is harmless because, as detailed in the next section, the ALJ's determination that plaintiff did not satisfy the adaptive functioning requirement is proper and thereby her ultimate determination that plaintiff failed to satisfy Listing 12.05C, which requires that all three of its requirements be satisfied, is proper as well. *See*, *e.g.*, *Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7 (M.D.N.C. 14 Aug. 2013).

### 3. Adaptive Functioning Requirement

Substantial evidence supports the ALJ's determination that plaintiff's impairment did not meet the diagnostic description of mental retardation requiring a deficit in adaptive functioning. Listing 12.05. As previously noted, the ALJ found that plaintiff did not have the required deficit in adaptive functioning because she had "good adaptive behavior, social competence, and social maturity through a successful work history as to preclude a conclusion of disabling mental retardation." Tr. 16 ¶ 3. Citing this statement, plaintiff asserts that the ALJ's finding on adaptive functioning was based solely, and improperly, on her work history as a hairstylist, which plaintiff argues was not "successful" as the ALJ found. (Pl.'s Mem. 5). The court finds no error.

A claimant's work history can be relevant to whether a claimant with subaverage intellectual functioning has deficits in adaptive functioning satisfying the corresponding requirement of the diagnostic description of mental retardation. *See, e.g.*, *Hancock*, 667 F.3d at

476 (affirming ALJ's finding that claimant did not have deficits in adaptive functioning based on, among other evidence, claimant's work history); *Richardson v. Colvin*, No. 8:12-cv-3507-JDA, 2014 WL 793069, at *12 (D.S.C. 25 Feb. 2014) ("[W]ork history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, . . . can be relevant in determining whether a claimant manifested deficits in adaptive functioning . . . ."). In fact, work is specifically designated as one of the areas to be considered in the assessment of adaptive functioning. *See Jackson*, 467 Fed. Appx. at 218.

Despite plaintiff's contention, there is substantial evidence in the record to support the ALJ's findings regarding her work history. As both the record and plaintiff's testimony indicate, she completed beauty school and received a cosmetology license when she was 18 and worked, albeit intermittently, as a hairstylist until 2009, a period of more than 20 years. Tr. 35-37, 187, 588. While plaintiff asserts that she was "unable to hold a given job for more than a couple of months at a time" (Pl.'s Mem. 6),[11] she reported to Mr. Radson that she held one hairstylist position for seven years (Tr. 588). Plaintiff certainly views herself as a successful hairstylist; she testified, "I was a good hairdresser. I really was." Tr. 47-48.

Further, plaintiff testified at the hearing that she stopped working as a hairstylist not because of problems with her ability to cope with life demands or to function independently (*see* DSM-IV-TR 42), but because of various physical impairments. *See, e.g.*, Tr. 38; 42 (plaintiff's testimony that she stopped working because of "problems with her legs" and a diagnosis of and treatment for hepatitis C). The record contains evidence of other similar statements by plaintiff. *See*, *e.g.*, Tr. 192 (disability report form submitted with plaintiff's application stating that she was unable to work due to her "various physical problems"); Tr. 205 (work history report form

---

[11] In support of this assertion, plaintiff cites to her work history report. Tr. 248-49. However, this report covers, pursuant to the instructions on the report form, a claimant's work history for only the past 15 years. Tr. 248. As noted, plaintiff's work as a hairstylist spanned a period of more than 20 years.

14

by plaintiff stating that problems with her legs, arms, and hands will no longer allow her to work as a hairstylist); Tr. 476 (office visit note by treating pain management doctor stating plaintiff's report that she stopped working as a hairstylist because of pain); Tr. 588 (Mr. Radson's report noting plaintiff's statement to him that she stopped working because of treatment for hepatitis C, fibromyalgia, chronic back pain, and problems with her hands). The evidence also indicates that plaintiff was unsuccessful at jobs other than hairstylist due to their physical requirements. For example, she testified at the hearing that the job of cashier she held briefly was "too hard" for her because it involved "lifting too many boxes." Tr. 37.

Plaintiff's ability to successfully perform the job of hairstylist is significant to the ALJ's determination because it requires a level of skill that is not consistent with mental retardation. More specifically, the DOT description for cosmetologist, DOT No. 332.271-010, which both the VE and the ALJ used to categorize plaintiff's past relevant work (Tr. 22, 54), has a Specific Vocational Preparation[12] ("SVP") level of 6, which indicates skilled work. *See* DOT def. of "Cosmetologist." Plaintiff's ability to satisfy the skill requirements of this position is not consistent with mental retardation. *See Williams v. Comm'r of Soc. Sec.*, No. 4:13-CV-00058, 2014 WL 5361311, at *5 (W.D. Va. 21 Oct. 2014) (holding that it was proper for the ALJ to consider the claimant's skilled work as a bricklayer in determining that he did not have sufficient deficits in adaptive functioning required for 12.05C) (citing *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 Fed. Appx. 870, 873 (11th Cir. 2014) (holding that it was proper for the ALJ to consider the claimant's past work as a skilled cook when determining that he did not meet the adaptive functioning requirement of Listing 12.05C)); *see also Hines v. Astrue*, 317 Fed. Appx.

---

[12] An SVP level indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT app. C § II. An SVP of 5 to 9 corresponds with skilled work. Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *3 (4 Dec. 2000).

576, 579 (8th Cir. 2009) (approving the ALJ's characterization of the claimant's prior work in a semi-skilled job as inconsistent with mental retardation for purposes of Listing 12.05C); *Scott v. Colvin*, No. 1:13CV63 ACL, 2014 WL 4659481, at *11 (E.D. Mo. 17 Sept. 2014) (affirming the ALJ's determination that the claimant did not have the requisite deficits in adaptive functioning for Listing 12.05C because his performance of skilled work as a meat cutter, which has an SVP level of 6, is inconsistent with mental retardation). Further, the fact that plaintiff was able to complete beauty school and obtain her cosmetology license at the age of 18 substantiates that plaintiff did not demonstrate deficits in adaptive functioning before the age of 22, as required.

Additionally, despite her assertion, it is clear that plaintiff's work history was not the sole basis for the ALJ's finding on the adaptive functioning requirement. First, the ALJ's finding is consistent with her explanation of why plaintiff did not meet the paragraph B requirements of Listing 12.05. Specifically, she found that plaintiff had only mild restrictions in activities of daily living because she was "able to live alone and . . . to perform all the household chores except cooking, but she was able to clean, do some light grocery shopping, mow the grass, garden, and some occasional driving." Tr. 15 ¶ 3.

As part of her RFC analysis, the ALJ made similar findings:

> The claimant admitted she worked as a hairdresser intermittently due to pain but she did babysit her three year-old grandson four days a week and she cared for another child a couple hours each day. She did all the household chores except for cooking, she read, watched television, gardened, mowed the grass on a riding mower, she walked, and did stretching exercises.

Tr. 18 ¶ 4. She further found:

> The evidence showed [and] the claimant testified she could not read or write and she only had an eighth grade education, but she still was able to go to beauty school, graduate, and work as a beautician. She underwent a cognitive evaluation in 2011, and her activity level and attending skills were average in this structured one on one setting. There were no unusual mannerisms, and her responses were

relevant and logical. The claimant was not found with a cognitive disorder at that time.

Tr. 20 ¶ 4. The ALJ also noted that plaintiff "was caring for her grandchildren as late as 2011" and that the "act of caring for young children can be physically and mentally demanding for anyone and is inconsistent with alleged claims of disability." Tr. 21 ¶ 4; *see, e.g., Richardson*, 2014 WL 793069, at *12 (holding that in determining level of adaptive functioning, "[a] guiding factor is whether the claimant has ever provided care for others, or, conversely, whether he himself is dependent on others for care"). Accordingly, it is clear that the ALJ considered more than plaintiff's work history in determining her level of adaptive functioning.

Additional evidence in the record supports the ALJ's finding that plaintiff did not meet the adaptive functioning requirement. Such evidence includes, for example, the observations made by Mr. Radson during his examination of plaintiff:

> [Plaintiff] was dressed casually in clothing suitable for the spring season. Hygiene and grooming were adequate. She cooperated with tasks requested of her and was talkative and polite. Eye contact and rapport were easily established and maintained. Her activity level and attending skills were average in this structured one-to-one setting. No unusual mannerisms or behaviors were reported or observed. She appeared anxious and was observed to smile. Speech was fluent and coherent. Her responses were relevant and logical.

Tr. 587. Mr. Radson further noted that plaintiff had a driver's license and resides alone. Tr. 588; *see also* Tr. 197 (plaintiff reporting that she drives). Notably, despite plaintiff's IQ scores, Mr. Radson did not ultimately diagnose plaintiff with either mental retardation or a cognitive disorder, but rather rule out cognitive disorder NOS and rule out mental retardation. Tr. 590. This further supports the ALJ's determination that plaintiff did not have the adaptive deficits necessary to support a diagnosis of mental retardation.

Testimony and statements by plaintiff beyond those already referenced also support the ALJ's determination. For example, she testified at the hearing that she has lived by herself for a

17
Case 4:13-cv-00257-D   Document 38   Filed 01/21/15   Page 17 of 19

"long time." Tr. 37. Plaintiff also reported no problems with managing her finances. Tr. 197-98.

Additionally, consulting nonexamining psychologist W.W. Albertson, Ed.D. found in a Psychiatric Review Technique ("PRT") form (Tr. 68-72), dated 11 May 2011, that plaintiff did not meet Listing 12.05. Tr. 68. Instead, in a mental RFC assessment form (Tr. 71-73) of the same date, he agreed with Mr. Radson's conclusion that plaintiff was capable of SRRTs. Tr. 225. Further, Dr. Albertson noted that plaintiff is able to "take care of most of her ADLs unless limited by physical issues" and that her school records indicated "IQs in the 80-90 range." Tr. 73. In a subsequent PRT and mental RFC assessment on 27 July 2011, consulting nonexamining psychologist Jeannie Nunez, Psy.D., made essentially the same findings. Tr. 84-90.

The ALJ gave these opinions "great" weight, explaining:

> Jeannie Nunez, Psy.D., and W.W. Albertson, Ed. D., opined the claimant had the ability to understand and remember short and simple instructions, maintain attention and concentration long enough to complete simple tasks, the claimant had the ability to accept criticism from supervisors and others in the work place, and the claimant had the ability to react appropriately to the changes in the work setting. These opinions were given great weight as they were supported by the medical evidence of record and her functionality as she admitted she was able to perform some cleaning, cooking, driving, caring for children, gardening, mowing the grass, and she was able to read. (Ex. 3A, 1A).

Tr. 22 ¶ 4. Substantial evidence, including that which has been previously discussed, supports this determination.

For the foregoing reasons, the court concludes that the ALJ properly determined that plaintiff does not meet Listing 12.05C because she does not have a deficit in adaptive functioning. Consequently, plaintiff's challenge to the ALJ's decision should be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 35) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 33) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 4 February 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 21st day of January 2015.

_____
James E. Gates
United States Magistrate Judge